**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **YVONNE TORRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 09-443 (RMC) |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Yvonne Torrence sues the District of Columbia and D.C. Public Schools (DCPS) seeking a declaration that DCPS discriminated against her child, C.H., in violation of § 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, and requesting relief under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The District of Columbia moves for partial dismissal of DCPS as a defendant and of the claim under § 504. Ms. Torrence concedes that DCPS should be dismissed.[1] While Ms. Torrence contests the dismissal of her Rehab Act claim, because she has failed to state such a claim, that claim will be dismissed. The IDEA claims will remain.

**I. BACKGROUND**

**A. Statutory Scheme**

The IDEA ensures that "all children with disabilities have available to them a free

---

[1] In response to the motion for partial dismissal, Ms. Torrence indicates that she does not oppose the dismissal of DCPS as a named party because claims against DCPS can be construed as having been brought against the District. Pl.'s Opp'n [Dkt. # 6] at 1 (citing *Hinson v. Meritt Edu. Ctr.*, 521 F. Supp. 2d 22, 34 (D.D.C. 2007)).

appropriate pubic education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In other words, the IDEA guarantees children with disabilities the right to a free appropriate public education ("FAPE"). *Id*. In designing an appropriate education for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate to develop an individualized educational program ("IEP") to meet the child's unique needs. *See* 20 U.S.C. § 1414(d)(1)(B). Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See* 20 U.S.C. § 1414(d)(1)(A). The IEP team examines the student's educational history, progress, recent evaluations, and parental concerns prior to implementing a FAPE for the student. *Id*. To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEA's procedures; and (2) the IEP developed through those procedures was reasonably calculated to enable the student to receive educational benefits. *Loren F. v. Atlanta Indep. Sch. Sys*., 349 F.3d 1309, 1312 (11th Cir. 2003).

While the District of Columbia is required to provide students with a public education, the IDEA does not guarantee any particular outcome or any particular level of education. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If the parent objects to the identification, evaluation, or educational placement of the student, or the provision of a free appropriate public education, 20 U.S.C. § 1415(b)(6), the parent may seek an impartial due process hearing. *Id*. § 1415(f)(1). If the parent is dissatisfied with the outcome of that hearing, s/he may appeal the decision to a state court or a federal district court. *See* 20 U.S.C. § 1415(i)(2)(A).

**B. Facts**

Ms. Torrence is the parent of C.H., a fourteen-year-old boy who is eligible for special education and related services as a child with multiple disabilities. Compl. ¶¶ 5, 8. At a multidisciplinary team (MDT) meeting on May 14, 2008, the team determined that C.H.'s emotions and behavior interfered with his academic progress and that a comprehensive psychological evaluation of C.H. was warranted. *Id*. ¶ 10. When DCPS did not conduct such an evaluation of C.H. before October 1, 2008, Ms. Torrence wrote to the school system and asked authorization to obtain psychiatric and comprehensive psychological evaluations of C.H. independently. *Id*. ¶¶ 11, 12. Ten days later, with no response received, Ms. Torrence filed an administrative complaint under IDEA, alleging that DCPS had failed "timely to conduct and review evaluations in all areas of suspected disability." *Id*. ¶ 14. A hearing on the administrative complaint was held on November 26, 2008, and a hearing officer's decision issued on December 6, 2008, denying the claim and dismissing the case.

In the Complaint here, Counts I and II allege violations of IDEA. Count III alleges Discrimination by a Program Receiving Federal Financial Assistance, in violation of § 504 of the Rehab Act, 29 U.S.C. § 794. Specifically, Count III alleges:

> 25. Section 504 of the Rehabilitation Act and its implementing regulations require DCPS to provide FAPE to all children with disabilities in its jurisdiction.
>
> 26. DCPS has created and adhered to a policy, custom or practice of refusing timely to conduct, review, or authorize funding of evaluations of special education students in the District of Columbia, including C.H.
>
> 27. DCPS acted with bad faith and gross misjudgment in refusing timely to conduct, review, or authorize funding of independent

evaluations of special education students.

28.  Through its policy, custom or practice or refusing timely to conduct, review, or authorize funding of independent evaluations of students including C.H., DCPS has violated and continues to violate Section 504.

29.  DCPS' policy, custom or practice or refusing timely to conduct, review, or authorize funding of independent evaluation of special education students denied C.H. his right to FAPE under Section 504.

Compl. ¶¶ 25-29.  The District moves to dismiss Count III for failure to state a claim.  Ms. Torrence opposes.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.*  Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief.  *Id.* at 555 n.3.  "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### III. ANALYSIS

The question raised by the District of Columbia is whether the Complaint allegations quoted above are sufficient to state a cause of action under § 504 of the Rehab Act. The logic of the Complaint is that the failure of DCPS to provide timely tests of C.H. denied him FAPE and thereby

violated both IDEA and the Rehab Act.[2]  As the District points out, however, the contours of FAPE under IDEA and § 504 are not the same.  Were it otherwise, every common place violation of IDEA would also violate § 504, which the D.C. Circuit has found is not the intention of the statutes.

To demonstrate a § 504 violation, "something more than a mere failure to provide the 'free and appropriate education' required by the [IDEA] must be shown."  *Lunceford v. District of Columbia Bd. Of Educ.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)).  Decided under the Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. § 1401 *et seq.*, a predecessor statute which IDEA has replaced, *Monahan* detailed what more is needed.  Section 504 reads, in pertinent part:

> No otherwise qualified handicapped individual in the United States . . . shall, *solely by reason of* his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794 (emphasis added).  *Monahan* concluded that "[t]he reference in the Rehabilitation Act to 'discrimination' must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist."  *Monahan*, 687 F.3d at 1170.  A court's conclusion that "an incorrect evaluation has been made, and that a different

---

[2]  Ms. Torrence argues in her brief:

> Ms. Torrence alleges in her complaint that the Defendant denied C.H. FAPE by failing to ensure the proper evaluation of C.H.  According to the regulations and all precedent, that allegation constitutes an allegation of the discriminatory treating of C.H. by reason of [his] disability.

Pl.'s Opp'n at 3-4.  The argument equates FAPE for purposes of IDEA with FAPE for purposes of § 504, which, as explained here, is fundamentally misguided.

placement must be required under [IDEA], is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap." *Id.* The court in *Monahan* specified that it did "not read § 504 as creating general tort liability for educational malpractice." *Id.* Rather, "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out." *Id.* at 1171. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* at 1171 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982) (footnotes omitted) (action under 28 U.S.C. § 1983 against medical professionals)).

In *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008), the Ninth Circuit further explained that FAPE under IDEA and the Rehab Act are not identical.

> FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the "design" of a child's educational program. *See* 34 C.F.R. § 104.33(b)(1) (a FAPE requires education and services "*designed* to meet individual educational needs of handicapped persons *as adequately* as the needs of non-handicapped persons are met" (emphasis added)); *cf.* 20 U.S.C. §§1401(9), 1414(d)(1)(A)(i)(II).
>
> Moreover, the U.S. [Department of Education's] § 504 regulations distinctly state that adopting a valid IDEA IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements. 34 C.F.R. § 104.33(b)(2) ("Implementation of an [IEP under the IDEA] is *one means* of meeting" the substantive portion of the § 504 regulations' definition of FAPE (emphasis added); *id.* § 104.36 ("Compliance with the procedural safeguards of § 615 of the [IDEA] is *one means* of meeting" the § 504 procedural requirements in § 104.3(6) (emphasis added)). Plaintiffs who allege a violation of the FAPE requirement contained in U.S. DOE's § 504 regulations,

consequently, may *not* obtain damages simply by proving that the
IDEA FAPE requirements were not met.

*Mark H.*, 513 F.3d at 933. Thus, § 504 is attuned to programmatic failures while the IDEA is
focused on the individual student who needs special education.

Ms. Torrence alleges two facts to support her claim of a § 504 violation: (1) "DCPS
did not conduct and review a comprehensive psychological evaluation of C.H. before October 1,
2008," and 2) "DCPS did not respond to the Plaintiff's request or conduct any of the requested
evaluations before October 10, 2008." Compl. ¶¶ 11 & 13. These facts do not show anything other
than a possible denial of FAPE under the IDEA; they do not support an allegation of any
programmatic failure nor do they support an allegation that DCPS *discriminated* against C.H. solely
because of his disability or an allegation that DCPS acted in bad faith or with gross misjudgment.
Accordingly, Count III of the Complaint will be dismissed for failure to state a claim under § 504
of the Rehab Act.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion for partial dismissal [Dkt. # 4]
will be granted. DCPS will be dismissed as a party, and Count III of the Complaint will be
dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: November 17, 2009 _____/s/_____
ROSEMARY M. COLLYER
United States District Judge